J. J. GAVIN & CO., INC., (SALOMON & PHILLIPS) *v.* UNITED STATES

**No. 7562.**—Invoices dated London, England, December 5, 1941, etc.
Entered at New York, N. Y., February 5, 1942, etc.
Entry No. 737108, etc.

(Decided March 8, 1948)

*Lane & Wallace* (*William Young* and *Thomas M. Lane* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

OLIVER, Presiding Judge: These appeals involve importations of saddle soap exported by Propert, Ltd., of London, England, on or about December 8, 1941, January 8, 23, and February 28, 1942. The appeals have been abandoned as to any items other than saddle soap. The merchandise in the test case (144617–A) was entered at *per se* values less discounts of 17½ per centum and 2½ per centum, plus cases and packing, and was appraised at the *per se* values less 2½ per centum discount, plus cases and packing. The other three cases were entered under so-called duress because of advances made by the appraiser in the test case. Foreign value as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is conceded to be the proper basis for the determination of the value herein (R. 7, 9).

The importer offered in evidence two affidavits of L. A. Bradbury, a director of Propert, Ltd., the exporter of the imported merchandise (collective exhibit 1 and exhibit 2). The Government offered in evidence certain correspondence with additional data, which was received as collective exhibits A, B, C, and D.

Collective exhibit 1 states that it is the universal practice of manufacturers and dealers of products such as or similar to products manufactured and dealt in by Propert, Ltd., to allow trade discounts based on the money value of individual purchases covering one or more items offered for sale and that such practice is in the ordinary course of trade in said industry; that all buyers are given the privilege of including in their purchases any items offered for sale to make up the total money value of the purchases on which trade discounts are allowed; that the prices shown in the price lists marked exhibits "A" and "B", which are attached to said affidavit, subject to the stated terms and discounts, are prices and terms freely offered to all persons for home consumption in England in wholesale quantities during 1941 and 1945; that exhibit C, which is also attached thereto, is a price list showing terms and discounts applying to purchases in less than wholesale quantities and that such terms were in effect in all years from 1941 to 1945.

Said exhibits A and B (attached to collective exhibit 1) show the following terms: -

*Wholesale terms*

| | |
|---|---|
| Section marked "Net" | Net |
| Under £6 | 12½% |
| £6 and under £10 | 15% |
| £10 and over | 17½% |

Carriage Paid Limit, £3.

Cash Terms: 2½% for cash by 14th of month following invoice date.

Exhibit C (attached to collective exhibit 1) shows the following terms:

*Terms*

| | |
|---|---|
| Section marked "NET" | Net |
| Under £2 | 2½% |
| £2 and under £4 | 5% |
| £4 and over | 10% |

Carriage Paid Limit, £3.

Cash Terms: 2½% for cash by 14th of month following invoice date.

Exhibit D (attached to collective exhibit 1) is a summary of sales by the manufacturer of all of its merchandise sold for home consumption during the months of May, June, and July 1941, which is claimed to be fairly representative of business transactions during the years subsequent to 1941 and shows trade discounts ranging from "Nett" to 17½ per centum. It also shows the number of sales made involving each discount rate and the total money value of the merchandise sold. The sales indicated by the term "Nett" in this schedule are not at terms commonly known as "Net," neither are they the "Net" prices indicated in the price lists, but consist in greater part of sales to military units at net prices representing list prices, less 17½ per centum discount, together with some items purchased and sold at cost for advertising purposes. These "Nett" items are not included in the analyses hereinafter given because they are not regarded by the manufacturer as being in the ordinary course of trade.

On the foregoing facts, which are not seriously disputed, the plaintiff contends that a discount of 17½ per centum be allowed, claiming that that discount is accorded to all of Propert's merchandise when sold in the usual wholesale quantities and in the ordinary course of trade and because that discount is accorded on the major number of sales of saddle soap and the larger volume of trade in saddle soap. The *per se* prices are not challenged.

The above referred to compilation of sales (exhibit D attached to collective exhibit 1) refers to all sales of all merchandise manufactured by Propert, Ltd., during May, June, and July 1941. The price lists attached to said exhibit as exhibits A, B, and C, identify the many various kinds of merchandise dealt in by this manufacturer. However, the sales of totally different, unrelated goods can have no bearing on the question of the value of saddle soap, even though it may be the ordinary course of trade in the industry to sell saddle soap, together with any other products manufactured by the same firm, on the same invoice. In *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129, it was held:

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which

merchandise like or similar to that imported is freely offered for sale *to all pur-chasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. * * * [Italics quoted.]

Therefore, the only sales that can be considered in determining this question are the sales of saddle soap.

Part of collective exhibit B is a compilation of all of the sales of saddle soap made by this manufacturer for home consumption during the months of May, June, and July 1941 which may be fairly summarized as follows:

    42 sales at a discount of_____17½%
    9 sales at a discount of_____15%
    13 sales at a discount of_____12½%
    54 sales at a discount of_____10%
    22 sales at a discount of_____5%
    16 sales at a discount of_____2½%

Considering the "wholesale" terms of the price lists (exhibits A and B attached to collective exhibit 1) and applying them to saddle soap, it would appear that the purchaser would have to purchase a minimum of £10-0-0 worth of saddle soap to receive a 17½ per centum discount; on purchases of over £6-0-0 and less than £10-0-0, the discount would be 15 per centum; and on sales amounting to less than £6-0-0 the allowance would be 12½ per centum. Considering the terms of exhibit C (attached to collective exhibit 1), which purports to apply to purchases claimed to be less than wholesale quantities, in respect to saddle soap only, the purchaser would have to purchase a minimum of £4-0-0 worth to receive a discount of 10 per centum; over £2-0-0 and under £4-0-0 worth to receive a discount of 5 per centum; and under £2-0-0 worth to receive a discount of 2½ per centum.

A further breakdown of the sales listed in collective exhibit B, the compilation of all of the sales of saddle soap by this manufacturer in May, June, and July 1941, shows that the price list terms (exhibits A and B attached to collective exhibit 1) were not adhered to. As the quantity of saddle soap involved in any of these sales is not shown by this record, resort therefor must be had to comparison of the total invoice amount of each sale, with the following results:

Of the 42 sales made at a discount of 17½ per centum, only 3 were in an amount in excess of £10-0-0. The other 39 sales ranged in amounts from £0-5-3 to £9-9-0.

Of the 9 sales made at a discount of 15 per centum, only 1 was in an amount in excess of £6-0-0. The other 8 sales ranged in amounts from £0-10-6 to £3-3-0.

The 13 sales made at a discount of 12½ per centum ranged in amounts from £1-1-0 to £3-3-0.

The 54 sales made at a discount of 10 per centum ranged in amounts from £0–4–3 to £6–6–0.

The 22 sales made at a discount of 5 per centum ranged in amounts from £0–5–3 to £3–3–0.

The 16 sales made at a discount of 2½ per centum ranged in amounts from £0–4–3 to £1–11–6.

From the above synopsis it appears that some of the sales at a discount of 2½ per centum involved a greater amount of saddle soap than some of the sales in which a 17½ per centum discount was allowed. These sales records establish that the price does not depend upon the quantity of saddle soap purchased; therefore there is no necessity to determine the usual wholesale quantity. (*Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093.) Neither does the discount depend upon the status of the purchaser, whether wholesaler or retailer, since the amounts involved in some of the sales at a 2½ per centum discount compare very favorably with the amounts involved in some of the sales at the other discounts up to and including the 17½ per centum discount.

These appeals are governed by the Customs Administrative Act of 1938 and following the principle announced in *United States* v. *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, I am compelled to determine the value of this merchandise.

From this record it appears that all purchasers are entitled to, and do receive, a minimum trade discount of 2½ per centum in addition to a cash discount of 2½ per centum. I therefore find the foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, to be the proper basis for the determination of the value of the saddle soap here involved, and that such values were the entered unit values, less 2½ per centum trade discount, less 2½ per centum cash discount, cases and packing extra. *United States* v. *Mexican Products Co.*, *supra*; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308. The appeals having been abandoned insofar as they relate to all other merchandise, to that extent the appeals are hereby dismissed.

Judgment will be rendered accordingly.